FILED
2017 Mar-06 PM 04:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| SHIRLENNA MCCKENZIE, as next friend of C.M., a minor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:15-cv-00243-JEO |
| ) | |
| TALLADEGA CITY BOARD OF EDUCATION; JENNIFER JACKSON, in her individual capacity; and JEWELL MONROE, in her individual capacity, ) | |
| ) | |
| Defendants. ) | |

## <u>MEMORANDUM OPINION</u>

This case originates in a school bus evacuation drill during which C.M., a special needs student at Graham Elementary School in Talladega, Alabama, fell and was injured. C.M.'s mother, Shirlenna McKenzie (the "Plaintiff"), has filed suit on behalf of her daughter against the Talladega City Board of Education (the "Board"); Jennifer Jackson, C.M.'s classroom teacher; and Jewell Monroe, the bus driver who conducted the evacuation drill (collectively, the "Defendants"). Her claims include a claim under 42 U.S.C. § 1983 against all of the Defendants for violating C.M.'s "substantive due process rights" and creating a "dangerous situation" when they forced C.M. to participate in the bus evacuation drill (Count I); a § 1983 claim against the Board for failing to adequately train and supervise

Jennifer Jackson and maintaining a custom or practice that exhibited "deliberate indifference" to C.M.'s "constitutional rights" (Count II); a claim against the Board for negligence (Count III); a claim against Jennifer Jackson for negligence and wantonness (Count IV); and a claim against Jewell Monroe for negligence and wantonness (Count V).  (Doc. 31("Am. Complaint")).

The case in now before the Court on motions for summary judgment by Jackson and Monroe (doc. 56) and the Board (doc. 58).  The Defendants have also filed a motion to strike two affidavits submitted by the Plaintiff in opposition to the motions for summary judgment. (Doc. 64).  For the reasons discussed below, the Defendants' motion to strike the affidavits will be granted in part and denied in part; the Defendants' motions for summary judgment will be granted as to the Plaintiff's § 1983 claims; and the Plaintiff's state law claims will be dismissed without prejudice.

## PROCEDURAL HISTORY

The Plaintiff initially filed this action against only the Board and Jennifer Jackson. (Doc. 1).  She subsequently amended her complaint and added Jewell Monroe as a defendant. (Doc. 31).  The Defendants then filed a motion for judgment on the pleadings, arguing (in part) that the Court lacked subject matter jurisdiction over the case because the Plaintiff had not exhausted her administrative remedies under the Individuals with Disabilities Education Act ("IDEA"), 20

2

U.S.C. § 1400 *et seq.*[1] (Doc. 48).  The Plaintiff opposed the motion for judgment on the pleadings, asserting in her opposition that "[t]his is simply not an IDEA case." (Doc. 51 at 5).  She stated that she "has no issue and has made no claim regarding the sufficiency of C.M.'s IEP or access to a Free and Appropriate Public Education (FAPE)," noting that "IDEA's primary purpose is to ensure a FAPE, not to serve as a tort-like mechanism for compensating personal injury." (*Id.* at 3-4). The Court agreed with the Plaintiff and denied the Defendants' motion. (Doc. 55).

Following the completion of discovery, the Defendants filed the present motions for summary judgment.  (Docs. 56 & 58).  In response to the summary judgment motions, the Plaintiff has submitted (among other evidentiary support) the Affidavit of Bernadine Jackson (doc. 62-4) and the Affidavit of Robin Dates (doc. 62-12), two co-employees who witnessed the bus evacuation drill at issue here.  The Defendants have moved to strike the two affidavits because they were not produced by the Plaintiff during discovery.  (Doc. 64).  The Court will first

---

[1] The IDEA was enacted, in part, "to ensure that all children with disabilities have available to them a free appropriate education that emphasizes special education and related services designed to meet their unique needs. …" 20 U.S.C. § 1400(d)(1)(A). The IDEA requires public educational agencies to have an Individualized Education Program ("IEP") in effect at the beginning of each school year for each child with a disability.  20 U.S.C. § 1414(d)(2)(A).  An IEP is a written statement for each child with a disability that includes, among other elements, a statement of the child's "present level of academic achievement and functional performance" and a statement of "measurable annual goals, including academic and functional goals," for the child. 20 U.S.C. § 1414(d)(1)(A).

address the Defendants' motion to strike the affidavits, and will then turn to the

motions for summary judgment.

## THE DEFENDANTS' MOTION TO STRIKE

Bernadine Jackson is a paraprofessional who worked in Jennifer Jackson's

classroom at Graham Elementary.  She also drove the special needs bus that C.M.

regularly rode.  Robin Dates worked as a special education aide in teacher Amy

Crowe's classroom at Graham Elementary.  She also served as Bernadine

Jackson's bus driver aide.

As noted, the Plaintiff's opposition to the Defendants' motions for summary

judgment includes an affidavit from Bernadine Jackson and an affidavit from

Robin Dates.  (Docs. 62-4 & 62-12).  In the affidavits, Jackson and Dates provide

background information regarding their employment by the Board, the training

they have received over the years, and their familiarity with C.M., and describe

what they witnessed on the date of the bus evacuation drill.  Both affidavits were

signed on April 16, 2015, during the discovery phase of this action.  Pursuant to

FED. R. CIV. P. 37(c) the Defendants have moved the Court to strike the affidavits

as a sanction for the Plaintiff's failure to produce the affidavits during discovery.[2]

They argue that the Court should strike the affidavits in their entirety or, at a

---

[2] Rule 37(c) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

minimum, strike certain portions of the affidavits because they contain improper testimony as to causation and inadmissible hearsay.  The Plaintiff did not respond to the motion to strike.

The Court declines to grant the Defendants' motion to strike the affidavits *in toto*, for two primary reasons.  First, Bernadine Jackson and Robin Dates are not surprise witnesses whose identities were kept hidden from the Defendants.  To the contrary, the Plaintiff's amended complaint alleges that "C.M.'s bus driver Bernadine Jackson (who is also a para-professional) and another para-professional, Robin Dates, witnessed the entire incident from their nearby classroom windows." (Am. Complaint at ¶ 42).  The Court also notes that the Defendants do not argue that the Plaintiff failed to identify Jackson and Dates as "individual[s] likely to have discoverable information … that the disclosing party may use to support its claims or defenses," as required by FED. R. CIV. P. 26(a).[3]  The Defendants' assertion in their motion to strike that they "would have deposed B. Jackson and Dates had they known Plaintiff intended to rely on B. Jackson['s] and Dates' testimony" (doc. 64 at 5) rings hollow, given the Plaintiff's identification of Jackson and Dates as witnesses in her amended complaint and, presumably, in her Rule 26 disclosures.  Indeed, the Court finds it surprising that the Defendants elected not to depose Jackson and Dates during discovery.  Regardless of whether

---

[3] The Plaintiff's Rule 26 disclosures are not before the Court.

their affidavits had or had not been produced, the Court would have anticipated that the Defendants would want to depose two disclosed witnesses to the underlying incident.

Second, the Plaintiff did not conceal the existence of the two affidavits. As the Defendants acknowledge, the Plaintiff identified both affidavits in her privilege log and asserted that they were "attorney work product and therefore not discoverable." (Doc. 64-3 at 4). The Plaintiff provided the privilege log to the Defendants on October 15, 2015, more than a month and a half before the discovery cutoff date of November 30, 2015. (Doc. 64-3 at 2). The Court appreciates the Defendants' position that the affidavits are not attorney work product and should not have been withheld, but the Defendants had ample time to either file a motion to compel production of the affidavits under FED. R. CIV. P. 37(a) or notice Jackson's and Dates's depositions and elicit their testimony that way. The Defendants did neither.

In support of their motion to strike, the Defendants cite *Moore v. Corp. Facilities Mgt., L.L.C.*, Case No. 2:10-cv- 3354-SLB, 2012 WL 4329288 (N.D. Ala. Sept. 17, 2012). In *Moore*, Chief District Judge Sharon Blackburn granted the plaintiff's motion to strike a witness declaration submitted by the defendant in support of a motion for summary judgment. Unlike here, however, the identity of the witness in *Moore* had not been disclosed to the plaintiff prior to the deadline

for updating the parties' Rule 26 disclosures and prior to the close of discovery. Judge Blackburn determined that "[c]learly, plaintiff was prejudiced by defendant's failure to disclose [the identity of the witness] and the documents attached to his Declaration, which form the basis of defendant's defense to plaintiff's claims; due to the failure to disclose plaintiff had no opportunity to depose [the witness] within the time allowed by the court's scheduling order." *Moore*, 2012 WL 4329288 at *5. Under those circumstances, Judge Blackburn found that "defendant's failure to disclose within the time set forth in the court's Scheduling Order was not harmless" and granted the plaintiff's motion to strike. *Id.*

Here, in contrast, the Plaintiff disclosed the identity of Bernadine Jackson and Robin Dates as witnesses early in the litigation and disclosed the existence of their affidavits prior to the close of discovery, affording the Defendants ample opportunity to depose them within the time allowed by the Court's Scheduling Order. Although the Court does not condone the Plaintiff's withholding of the affidavits on questionable (at best) work product grounds, the Court finds, with some reluctance, that the Plaintiff's failure to produce the affidavits was harmless, given that the Defendants filed no motion to compel production of the affidavits and could have, in any event, deposed both witnesses.

The Court does, however, agree with the Defendants that certain portions of the affidavits should be stricken.  Specifically, the Court agrees that the 16th paragraph of Bernadine Jackson's affidavit and the10th paragraph of Robin Dates's affidavit should be stricken, because both paragraphs contain speculative and conclusory testimony regarding what would have happened if the evacuation drill had been conducted differently, as well as conclusory testimony that the Defendants' conduct violated mandatory Board policies.  The Court also agrees that the 8th paragraph of Jackson's affidavit and the 5th and 7th paragraphs of Dates's affidavit contain inadmissible hearsay, and to that extent those paragraphs are due to be stricken as well.  The Court has not considered any of the stricken testimony in ruling on the Defendants' motions for summary judgment.

## THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

## I.  SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986).  "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-moving party are not unqualified, however.  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation."  *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983) (alteration supplied).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis and alteration supplied).  *See also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## II.  FACTS[4]

The bus evacuation drill giving rise to this action was conducted in February 2013.  At that time, C.M. was 14 years old and a student at Graham Elementary.

C.M. suffers from cytomegalovirus, cerebral palsy, seizures, asthma, osteopenia, and arthritis.  During the 2012-2013 school year, she had the mental capacity of a preschooler.  She is non-verbal, other than a few words such as "hey" and "mom."  She is right-hand dominant, and is able to point at things she wants as a means of communication.  She is able to complete her school work with "hand over hand" and "hand under hand" assistance.

C.M. uses a wheelchair, although she is able to walk short distances. The Plaintiff testified that it is "fine" for C.M. to walk as long as there is "somebody beside her, because her legs will give out."  (McKenzie Dep. (Doc. 62-7) at 193). C.M.'s IEP for the 2012-2013 school year reflects:

> … [C.M.] had orthopedic surgery in 2011 and since that surgery, there has been a decrease in mobility skills.  She now wants to be transported in the wheelchair and complains when asked to stand and walk any distance.  She is now well healed from surgery and mom related that there will be no additional surgeries and she does not believe the surgery was successful.  Therapist did get [C.M.] to walk in the classroom and the short school hallway with one hand assistance.  [C.M.] also does not like to flex her knees ….

---

[4] These are the "facts" for summary judgment purposes only.  They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). Except where noted, the "facts" are undisputed.

> Recommendations: It is recommended that [C.M.] receive
> direct/consult services to help her return to short distance walking in
> the classroom.  Therapist did talk with [C.M.'s] mother and assure her
> that our goal is only to do classroom walking and not to do any stairs.

(Doc. 62-8 at 12).  Her 2012-2013 IEP further reflects that C.M.'s "present level of

performance is walking in little small increments in order to continue her mobility

level" and that C.M. "will participate in related PE activities with peers 80% of the

time … [and] will move appropriately in walking, exercises, and rhythmic

activities 80 % of the physical education class."[5]  (*Id.*)

At the start of the 2012-2013 school year, C.M. was a student in Jennifer

Jackson's special education class at Graham Elementary.  Jewell Monroe was an

instructional aide in the classroom, as well as a special needs bus driver.  She had

been a special needs bus driver for 20 years and had always satisfied and

completed all training, educational, and annual recertification requirements for

driving a special needs bus as imposed by the Board and the Alabama Department

of Education.  Despite serving as both an instructional aide and a special needs bus

driver, Monroe had never been given or examined a student's IEP.

---

[5] In her opposition brief, the Plaintiff argues that whether C.M. was ambulatory or non-ambulatory is a disputed fact.  (Doc. 62 at 2-3 & 17).  The Court does not agree.  There may be a dispute regarding the extent to which C.M. was ambulatory, but there is no genuine dispute that she was able to walk, as her mother admitted and her IEPs reflect.

In October 2012, C.M. suffered a swollen ankle during a fire drill at the school.[6] She was out of her wheelchair at the time of the drill. Following that incident, the Plaintiff told Jennifer Jackson and Principal Melissa Dyer that she did not want C.M. to be out of her wheelchair unless it was absolutely necessary.

The Alabama School Bus Driver Handbook (the "Handbook") provides that school bus drivers, including special needs bus drivers, must conduct bus evacuation drills at least twice each school year.[7] (Handbook at 45 & 53). The Handbook further provides that "[d]rivers and aides on special needs buses must devise a written plan for the emergency evacuation of their students prior to the first evacuation drill each year …." (*Id.* at 53). In addition, two evacuation blankets must be kept on each special needs bus and "used to drag students who are non-ambulatory towards the available exit, remove students from the bus and drag or carry them to a safe location." (*Id.* at 52-53).

According to Jewell Monroe, Wanda Cochran, the Transportation Director for the Talladega City Schools, instructed her to conduct one of her bus evacuation drills by February 15, 2013, and to include a wheelchair student in the drill.[8] Monroe had a wheelchair student who regularly rode her bus, but that student

---

[6] Jennifer Jackson disputes that C.M. was injured during the fire drill. (J. Jackson Dep. (Doc. 62-3) at 89-92).

[7] A copy of the Handbook is located at Docs. 62-11 through 62-15.

[8] Wanda Cochran denies instructing Monroe to use a wheelchair student in the drill. (Cochran Dep. (Doc. 62-16) at 35-36).

attended the high school and not Graham Elementary where Monroe worked as an instructional aide.  Monroe's bus driver aide, John Compton, also worked at a different school.  According to Monroe, Compton's availability to come to the elementary school to participate in the evacuation drill was limited and did not give them enough time to go to the high school, pick up their regular wheelchair student, and return to the elementary school to conduct the drill.  Consequently, Monroe decided (with Jennifer Jackson's permission) to use C.M. in the drill, even though C.M. regularly rode the special needs bus driven by Bernadine Jackson and had already participated in an evacuation drill on her bus.

Monroe conducted her bus evacuation drill on February 13, 2013.  She did not have an emergency evacuation plan in place at that time.[9]  Monroe conducted the drill from inside the bus, while Compton stood outside the back of the bus and assisted the students as they evacuated.  Jennifer Jackson witnessed the drill.  She had no training with regards to school bus evacuations and had not been authorized to supervise an evacuation drill.[10]

---

[9] The Defendants contend that Monroe testified that she did have an evacuation plan in place for the 2012-2013 school year.  (Doc. 65 at 9-10, citing Monroe Dep. at 331-32).  The Court does not agree.  Monroe's initial testimony on this point may have been subject to the interpretation advanced by the Defendants (the Court finds the cited testimony to be ambiguous), but she subsequently testified unequivocally that she did not fill out a bus evacuation plan for the drill on February 13, 2013, and "didn't fill one out until after this incident … because [she] didn't know much about it."  (Monroe Dep. at 333-34).

[10] The Defendants assert that Jewell Monroe supervised the bus evacuation drill and that Jennifer Jackson was merely a witness. (Doc. 65 at 4-5 & 14).

13

C.M. was the last student to be evacuated from the bus.  Monroe had never conducted a bus evacuation drill with a wheelchair student before.  She did not use a blanket to drag C.M. towards an exit.  Instead, she helped C.M. get out of her wheelchair and then walked with her towards the back of the bus.

Exactly what happened next is in dispute.  According to Monroe, she told C.M. that the plan was for C.M. to sit down on the floor of the bus and then slide towards the edge of the back door, where Compton was waiting to assist her off the bus.  C.M. began lowering herself to the floor of the bus, with Monroe's left hand on C.M.s left shoulder and Monroe's right hand behind C.M.'s back.  C.M. lost her balance and fell "straight down," landing on her "rear end" on the floor of the bus.[11]  After C.M. fell, Monroe and Compton "scooted" her to the edge of the bus and lowered her onto the ground.  C.M. then walked to her wheelchair, which had been lowered out of the bus and was a few feet away.  Monroe and Compton put C.M. in the wheelchair, and Jennifer Jackson pushed her in her wheelchair back into the classroom.  (Monroe Dep. (Doc. 62-6) at 146-67) .

Bernadine Jackson and Robin Dates disagree with Monroe's account of the incident.  Bernadine Jackson witnessed the incident from her desk in Jennifer Jackson's classroom.  According to Bernadine Jackson, Monroe helped C.M. take one or two steps to the edge of the back of the bus and then tried to get C.M. to

---

[11] Neither Compton nor Jennifer Jackson saw C.M. fall. (J. Jackson Dep. at 124; Compton Dep. (Doc. 62-1) at 113).

jump.  Monroe let go of C.M., who fell backwards into the bus.  Monroe and Jennifer Jackson picked up C.M. and lowered her off the back of the bus. They then tried to get C.M. to walk back into the classroom.  C.M. was crying the whole time.  (Doc. 62-4).

Robin Dates witnessed the incident from her desk in Amy Crowe's classroom.  According to Dates, Monroe stood behind C.M. at the back door of the bus and tried to get C.M. to bow or stoop to jump off the bus.  Dates then saw C.M. fall backwards.  Monroe and Jennifer Jackson, who was standing on the ground, picked up C.M. and took her off the bus.  They then made C.M. walk back into the building.  (Doc. 62-12).

Jennifer Jackson and Jewell Monroe reported the incident to Principal Melissa Dyer that afternoon.  Jackson told Dyer that C.M. had fallen during the bus evacuation drill and that her right arm appeared to be swelling.  The Plaintiff took C.M. to the emergency room that night.  X-rays revealed that C.M. had broken her wrist in three places, fractured a bone in her neck, and chipped a bone in her back.

At the Plaintiff's request, C.M. was moved out of Jennifer Jackson's special education class on February 22, 2013, and into Amy Crowe's class.  Additionally, Principal Dyer issued a "Student Safety-Letter of Concern" to Jackson, and Transportation Director Wanda Cochran issued a "Bus Evacuation-Letter of Warning" to Monroe.  Dyer noted that Jackson "should have demonstrated more

careful consideration of [C.M.'s] health history before consenting to use her in a

drill." (Doc. 62-21). Cochran admonished Monroe for using C.M. in the bus

evacuation drill instead of her regular wheelchair student. (Doc. 62-22).

Since the incident on February 13, 2013, C.M. has been unable to use her

right hand as she did before, and does not use the hand to wave or gesture. C.M.'s

2013-2014 IEP confirms that "[d]uring the past year, [C.M.'s] dominant right hand

suffered an injury and it is because of such that her ability to complete pointing

tasks was minimal." (Doc. 62-9 at 2).

## III.  ANALYSIS

### A.    The Plaintiff's Section 1983 Claims

The Plaintiff's amended complaint contains two federal claims under 42

U.S.C. § 1983: a claim that all of the Defendants violated C.M.'s "substantive due

process rights" by exhibiting "deliberate indifference" to C.M.'s well-being and

safety and creating a "dangerous situation" when they forced C.M. to participate in

the bus evacuation drill (Count I), and a claim against the Board for failing to

adequately train and supervise Jennifer Jackson and maintaining a custom or

practice that exhibited "deliberate indifference" to C.M.'s "constitutional rights"

(Count II). Section 1983 imposes liability on any person who, under color of state

law, deprives a person "of any rights, privileges, or immunities secured by the

Constitution and laws." 42 U.S.C. § 1983. To prevail on a claim under § 1983, a

plaintiff must show "(1) that the defendant deprived her of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998). To hold a governmental entity such as the Board liable under § 1983, a plaintiff must show "(1) that [her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). The governmental entity "must be found to have *itself* caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory." *Skop v. City of Atlanta,* 485 F.3d 1130, 1145 (11th Cir. 2007) (emphasis in original) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95)).

The Defendants argue that the Plaintiff's § 1983 claims fail as a matter of law. At the threshold level, all of the Defendants argue that the facts of this case are "insufficient to give rise to a claim for constitutional deprivation" and that the Plaintiff has "failed to adduce any facts that C.M. suffered any constitutional right or statutory deprivation, whatsoever." (Doc. 57 at 13-15). The Board also argues that there is no evidence of any Board policy or custom that resulted in C.M.'s injury, and no evidence that it was deliberately indifferent to C.M.'s constitutional rights. (*Id.* at 16-20). Jennifer Jackson and Jewell Monroe also argue that they are

entitled to qualified immunity and that the evidence fails to establish that they were deliberately indifferent to C.M.'s rights.  (*Id.* at 21-30).

In her opposition to the Defendants' summary judgment motions, the Plaintiff argues that C.M. "has a right to equal protection under the Fourteenth Amendment, including a right to equal access to education"; that C.M. "claims violations of her substantive due process rights under the Fourteenth Amendment, as well as her right to bodily integrity and to be free of bodily harm"; and that C.M. "has also made a claim under the state-created danger doctrine."  (Doc. 62 at 23 & 34).  The Plaintiff then argues that there is at least an issue of fact regarding the Board's "deliberate indifference" to C.M.'s rights as evidenced by "several customs and the Board's failure to train" Jackson and Monroe.  (*Id.* at 23-32).  She similarly argues that there is at least an issue of fact as to whether Jackson and Monroe are entitled to immunity because there is "ample evidence that they violated numerous policies."  (*Id.* at 32-36).  She also argues that there is at least an issue of fact as to whether Jackson and Monroe acted with "deliberate indifference" to C.M.'s rights.  (*Id.* at 36-40).

"A successful section 1983 action requires that the plaintiff show she was deprived of a federal right by a person acting under color of state law."  *Almand v. Dekalb Cnty, Ga.*, 103 F.3d 1510, 1513 (11th Cir. 1997).  In other words, if there has been no deprivation of a federal right, then a § 1983 claim necessarily fails,

irrespective of whether a defendant's conduct might otherwise have caused the plaintiff's injury or whether the defendant would otherwise be entitled to immunity.  Here, for the reasons that follow, the Court finds that there has been no violation of C.M.'s federal rights, be they her equal protection rights or her substantive due process rights.  Accordingly, the Plaintiff's § 1983 claims are due to be dismissed.

### 1. Equal Protection

The purpose of the equal protection clause of the Fourteenth Amendment "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination …." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quotations and citations omitted).  Here, there is no allegation anywhere in the Plaintiff's amended complaint that C.M.'s equal protection rights were violated or that she was subjected to any form of discrimination, much less any form of intentional and arbitrary discrimination.  There is nothing in the amended complaint to suggest that the Plaintiff's § 1983 claims are rooted in an alleged violation of the equal protection clause.[12]  To the extent the Plaintiff now cites C.M.'s equal protection right to equal access to education, the Plaintiff previously disavowed any claim based on C.M.'s access to education.  In her opposition to the

---

[12] Of course, a summary judgment memorandum is not a proper vehicle for amending the pleadings.  *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint in a brief opposing summary judgment.").

Defendants' motion for judgment on the pleadings, the Plaintiff stated that she "has no issue and has made no claim" regarding C.M.'s "access to a Free and Appropriate Education." (Doc. 51 at 3). Indeed, since the underlying incident C.M. has continued to attend Graham Elementary and has continued to receive special education services at the school, as reflected in her 2013-2014 IEP. Simply put, the Plaintiff has not alleged or demonstrated any violation of C.M.'s equal protection rights.

## 2.  Substantive Due Process

The Plaintiff's amended complaint does allege that C.M.'s substantive due process rights were violated. As noted above, Count I of the amended complaint alleges that the Defendants violated C.M.'s substantive due process rights by exhibiting "deliberate indifference" to C.M.'s "well-being and safety," and further alleges that the Defendants created a "dangerous situation" by forcing C.M. to participate in the bus evacuation drill. In Count II, the Plaintiff alleges that the Board's alleged failure to adequately train and supervise Jennifer Jackson and its alleged custom and practice regarding bus evacuation drills exhibited "deliberate indifference" to C.M.'s "constitutional rights," by which she presumably means

C.M.'s substantive due process rights.[13]   (*Id.* at ¶ 57).  In her opposition brief, the

Plaintiff alleges that the Board failed to adequately train Jewell Monroe as well.

The due process clause of the Fourteenth Amendment prohibits the states

from "depriv[ing] any person of life, liberty, or property, without due process of

law."  U.S. CONST. amend. XIV, § 1.  The due process clause "was intended to

prevent government officials from abusing their power, or employing it as an

instrument of oppression."  *County of Sacramento v. Lewis,* 523 U.S. 833, 846

(1998) (internal quotations and citations omitted).  The substantive component of

the due process clause "protects individual liberty against 'certain government

actions regardless of the fairness of the procedures used to implement them.'"

*Collins v. City of Harker Heights,* 503 U.S. 115, 125 (1992) (quoting *Daniels v.*

*Williams,* 474 U.S. 327, 331 (1986)).

Only in certain limited circumstances does the Constitution impose

affirmative duties of care on the states.  *Doe v. Braddy*, 673 F.3d 1313, 1318 (11th

Cir. 2012).  As originally defined by the Supreme Court, those circumstances exist

where (1) the state takes a person into custody, confining the person against his or

her will, and (2) the state creates the danger or renders a person more vulnerable to

an existing danger.  *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S.

189, 198-201 (1989).  However, the "stated-created danger" doctrine has since

---

[13] As discussed above, the amended complaint contains no reference to C.M.'s equal protection
rights.

been superceded by the standard employed by the Supreme Court in *Collins*. *Waddell v. Hendry Cnty. Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003). Now, "conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Id.* (citing *Collins*, 503 U.S. at 128).

Here, the Plaintiff has not alleged or argued that C.M. was in a custodial relationship with the Defendants. Indeed, the Eleventh Circuit has noted that "compulsory school attendance laws do not constitute a restraint on personal liberty sufficient to give rise" to a constitutional duty of protection under the due process clause. *Davis v. Carter*, 555 F.3d 979, 982 n.2 (11th Cir. 2009). Like the Eleventh Circuit, "each circuit to have addressed the issue has concluded that public schools do not have a special relationship with their students, as public schools do not place the same restraints on students' liberty as do prisons and state mental health institutions." *Doe ex rel. Magee v. Covington Cnty. School Dist. ex rel Keys*, 675 F.3d 849, 858 (5th Cir. 2012) (citing cases). Furthermore, the Eleventh Circuit has been "explicit in stating that 'deliberate indifference' is insufficient to constitute a due-process violation in a non-custodial setting." *Davis*, 555 F.3d at 983 (quoting *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1377 (11th Cir. 2002)). Therefore, to the extent that the Plaintiff's § 1983 claims are

based on the Defendants' alleged deliberate indifference to C.M.'s substantive due process rights, the claims fail as a matter of law.

Because C.M. was not in a custodial relationship with the Defendants, they cannot be held liable for violating her substantive due process rights unless their conduct "can be characterized as arbitrary or conscience-shocking in a constitutional sense." *Davis*, 555 F.3d at 982.  In this regard, the Eleventh Circuit has stated:

> The concept of conscience-shocking conduct "duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." [*Lewis*, 523 U.S.] at 848, 118 S. Ct. at 1717.  The Supreme Court has made clear "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Id.*  Thus, "the Fourteenth Amendment is not a 'font of tort law' that can be used, through section 1983, to convert state tort claims into federal causes of action." *Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000) (citing *Lewis*, 523 U.S. at 848, 118 S. Ct. at 1718).  To rise to the conscience-shocking level, conduct most likely must be "intended to injure in some way unjustifiable by any government interest [.]" *Lewis*, 523 U.S. at 849, 118 S. Ct. at 1718.

*Davis,* 555 F.3d at 982; *see also Waddell*, 329 F.3d at 1305 ("even intentional wrongs seldom violate the Due Process Clause").  As District Judge C. Scott Coogler has observed:

> [T]here are very few cases in the Eleventh Circuit in which the circumstances actually give rise to a constitutional [due process] violation.  Only in the limited context of due-process claims based on excessive corporal punishment has the court held that the intentional

conduct of a school educator may shock the conscience. *See Neal ex rel. Neal v. Fulton County Bd. of Ed.,* 229 F.3d 1069 (11th Cir. 2000) (high school coach intentionally struck a student with a metal weight lock, knocking the student's eye out of its socket, as a form of punishment for his involvement in a fight with another student); *Kirkland v. Greene County Bd. of Ed.,* 347 F.3d 903 (11th Cir. 2003) (high school principal violated a student's constitutional rights after he struck the student with a metal cane in the head, ribs, and back for disciplinary reasons).

*L.L. v. Tuscaloosa City Bd. of Educ.*, Case No. 7:08-cv-2051-LSC, 2013 WL 169612, *9 (N.D. Ala. Jan. 15, 2013).

Here, even assuming that the events of the bus evacuation drill unfolded as reported by Bernadine Jackson and Robin Dates, the evidence does not reflect any conduct by either Jennifer Jackson or Jewell Monroe that was intended to injure C.M.  Rather, the evidence reflects that Jewell Monroe (with Jennifer Jackson's permission) made an ill-advised and uninformed decision to use C.M. in the evacuation drill; that Jennifer Jackson witnessed the drill even though she had no training regarding bus evacuations and had not been authorized to supervise a bus evacuation drill; that Monroe conducted the drill without having a bus evacuation plan in place; that Monroe had never conducted a drill with a wheelchair student before; that Monroe required C.M. to get out of her wheelchair and walk (with Monroe's assistance) to the back of the bus rather than dragging C.M. on an evacuation blanket; that Monroe tried to get C.M. to jump off the back of the bus; that C.M. fell backwards onto the floor of the bus and was severely injured in the

fall; and that Monroe and Jennifer Jackson picked up C.M., lowered her out of the

bus, and tried to make her walk back into the classroom. These facts, though

unfortunate and lamentable, do not rise to the level of conscience-shocking

conduct necessary to support a substantive due process claim.  They are a far cry

from a coach intentionally striking a student in the eye with a metal weight lock as

a form of punishment or a principal striking a student with a metal cane in the

head, ribs, and back for disciplinary reasons.

Moreover, the facts of this case are no more egregious—and are actually

quite less egregious--than the facts of *Davis*, where the Eleventh Circuit found no

conscience-shocking conduct sufficient to give rise to a due process violation.  In

*Davis*, the plaintiffs' son died the morning after a voluntary workout session for his

high school football team. The plaintiffs alleged that the coaches had failed to

provide enough water to keep their son hydrated, ignored his complaints that he

was becoming dehydrated, subjected him to rigorous conditioning drills at the end

of a two-hour practice, and failed to attend to him until after a team meeting even

though he had collapsed in the middle of the drills.  *Davis*, 555 F.3d at 980-981.

The plaintiffs further alleged that if a student did not perform all of the exercises

and activities in the workout, he would be subject to discipline from the coaches.

*Id.* at 981.  On these facts, the Eleventh Circuit found that the coaches did not

violate the student's substantive due process rights because they did not engage in

corporal punishment, physically contact the student, or otherwise "act[ ] willfully or maliciously with an intent to injure" the student. *Id.* at 984. The court noted that the coaches were "deliberately indifferent to the safety risks posed by their conduct," but found that in a school setting, "allegations of deliberate indifference, without more, do not rise to the conscience-shocking level required for a constitutional violation." *Id.*; *see also Nix v. Franklin Cnty. Sch. Dist.,* 311 F.3d 1373, 1376-77 (11th Cir. 2002) (finding high school teacher's actions were not conscience-shocking, where student died from electrical shock after the teacher instructed his students to hold a live wire during a voltage-reading demonstration in his electromechanical class, warned the students that they might die if they accidently touched the exposed part of the wire, increased the voltage to the wire, and then turned away to answer a question).

Another useful comparator is *K.W. v. Lee Cnty. Sch. Bd.*, 67 F. Supp. 3d 1330 (M.D. Fla. 2014). There, an eight-year-old student who suffered from permanent medical disabilities, including ongoing pulmonary and respiratory problems, injured her left foot at school. *Id.* at 1333. The student informed her teacher that she was in a lot of pain and was unable to walk without trauma, but her teacher provided no assistance and verbally mocked her. *Id.* The teacher then sent the student to her physical education class. The student informed her physical education instructor that she was in significant pain and could not put any weight

on her foot, but the instructor demanded that the student participate in the class and cited her for having a behavioral problem when she refused to participate. *Id.* The instructor sent the student across the building to see the school counselor, who did nothing to assist the student and instead issued her a disciplinary note. *Id.* at 1333-34. By the end of the school day the student's pain was so severe that she collapsed as she was walking to the parent pick-up line. *Id.* at 1334. Her mother rushed her to the emergency room, where she was diagnosed with a fractured bone in her foot. *Id.* When the student returned to school three days later in a cast and on crutches, the staff told her that she could not use crutches without a doctor's note and forced her to return to the hospital to get a note. *Id.* She was also forced to attend her physical education class, and was issued a disciplinary note for not participating even though she had a physician's note indicating that she was not to participate in physical education because doing so could exacerbate her injury. *Id.* Despite her mother's complaints to the assistant principal and members of the school board, neither the school officials nor the school board investigated the incident or took any disciplinary action against any school employee. *Id.*

The student's mother filed suit against the school board, the student's teacher, her physical education instructor, and the school counselor for (among other claims) violating the student's substantive due process rights. The district court dismissed the claim, finding that the plaintiff's allegations that the defendants

intentionally failed to provide immediate medical assistance to the student and were deliberately insensitive to her medical need "[did] not rise to the conscience-shocking level." *Id.* at 1338. The court noted that the defendants' actions "were not the type of intentional and excessive corporal punishments inflicted by the school officials in *Neal* and *Kirkland*." *Id.* at 1339.

Here, similarly, Jennifer Jackson and Jewell Monroe did not engage in corporal punishment, strike C.M., or otherwise act with any intent to injure C.M. such that their conduct shocks the conscience. Accordingly, the Court finds no violation of C.M.'s substantive due process rights. Because no constitutional violation occurred, the Plaintiff's § 1983 claims necessarily fail without further inquiry into the Board's customs or policies. *See Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred.").

**B.    The Plaintiff's State Law Claims**

In addition to her federal claims under 42 U.S.C. § 1983, the Plaintiff has asserted a state law negligence claim against the Board and state law negligence and wantonness claims against Jennifer Jackson and Jewell Monroe. (Am. Complaint at ¶¶ 61-76). Because all federal claims in this case are being dismissed, the Court declines to exercise supplemental jurisdiction over the

remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3).  Those claims will be dismissed without prejudice and the Plaintiff may reassert them in state court.[14]

## CONCLUSION

Based on the above, the Defendants' motion to strike the affidavits of Bernadine Jackson and Robin Dates (doc. 64) will be denied in part and granted in part; the Defendants' motions for summary judgment (docs. 56 & 58) will be granted as to the Plaintiff's federal law claims under 42 U.S.C. § 1983; and the Plaintiff's state law claims will be dismissed without prejudice.  A separate order consistent with this opinion will be entered.

**DATED**, this 6th day of March, 2017.

_____
JOHN E. OTT
Chief United States Magistrate Judge

---

[14] The Court notes that the Plaintiff has offered no opposition to the Board's motion for summary judgment on her negligence claim.